| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CURTIS SWADENER, | ) | NO. EDCV 04-01057 (Mc) |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OF DECISION |
| v. | ) | AND ORDER IN A SOCIAL |
| | ) | SECURITY CASE |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, CURTIS SWADENER, filed the present action for review of a final determination of the Commissioner of Social Security (the "Commissioner") that the plaintiff is not disabled and not entitled to supplemental security income ("SSI") disability benefits. For the reasons set forth below, the court finds that the decision of the Commissioner is not supported by substantial evidence. The matter is, therefore, remanded for further proceedings.

## BACKGROUND

The plaintiff protectively filed an application for SSI disability benefits under the Social Security Act (the "Act") on August 15, 1996.[1] [Administrative Record ("AR") 193; 500-01.] The

---

[1] The plaintiff originally filed an application on July 2, 1992. [AR 209-12.] The plaintiff was granted SSI disability benefits by ALJ

Commissioner denied the application initially and on reconsideration. [AR 442-45, 467-70.] At the plaintiff's request, an administrative hearing was held before Administrative Law Judge F. Keith Varni on April 24, 1998, and on June 5, 1998, ALJ Varni issued a decision finding that the plaintiff was not disabled and not entitled to benefits. [AR 894-901.] The matter was remanded by the Appeals Council on September 24, 1999, with instructions that the case be reheard by a different ALJ. [AR 909-11.] Pursuant to the Appeals Council's Order of Remand, a second hearing was held on August 29, 2000, before Administrative Law Judge Charles E. Stevenson. [AR 1646-69.] On October 10, 2000, ALJ Stevenson also found the plaintiff not disabled and not entitled to benefits [AR 1303-08], and the matter was again remanded by the Appeals Council by Order of Remand dated June 10, 2002. [AR 1317-19.] A third hearing on the application was held before ALJ Helen E. Hesse ("the ALJ") on October 2, 2002 [AR 1586-1643], and on November 20, 2002, the ALJ filed a decision concluding that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 193-200.] The Appeals Council denied the plaintiff's request for review of the ALJ's decision. [AR 12-16.] The decision of the ALJ stands as the final decision of the Commissioner.

\\\

---

Jacqueline Drucker in a decision dated October 30, 1995. [AR 409-12.] However, because ALJ Drucker found that alcoholism was a contributing factor material to the determination of disability, the plaintiff was limited to thirty-six months of benefits. [AR 412.] 20 C.F.R. § 416.1331(d) and (e). The plaintiff, therefore, was required to file a new application pursuant to Public Law 104-121 [AR 500-01] to present evidence that he would still be disabled even if he stopped using drugs or alcohol. See Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998).

Thereafter, the plaintiff filed the present action. The plaintiff and the Commissioner have consented to proceed before a United States Magistrate Judge. The parties have entered into a Joint Stipulation setting forth their arguments.

### STANDARDS OF REVIEW

The court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a whole; or (b) the Commissioner applied an improper legal standard. See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human Services, 803 F.2d 1071, 1072 (9th Cir. 1986). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). "Substantial evidence" is evidence a "reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 402; Gordon v. Secretary of Health and Human Services, 803 F.2d at 1072.

This court must review the record as a whole and consider adverse as well as supporting evidence. See Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the court must sustain the Commissioner's decision. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

### THE FIVE-STEP SEQUENTIAL EVALUATION

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, the Commissioner determines whether the person is engaged in "substantial gainful activity." If so, the Commissioner denies disability

benefits. Second, if the person is not so engaged, the Commissioner determines whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, the Commissioner denies benefits. Third, if the person has a severe impairment, the Commissioner determines whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the Commissioner conclusively presumes that the person is disabled. Fourth, if the impairment does not meet or equal the "listed impairments," the Commissioner determines whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, the Commissioner denies benefits. Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to disability benefits only if he or she is unable to perform other work. See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

## PUBLIC LAW 104-121

Notwithstanding the above, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits. Under provisions added by the Contract with America Advancement Act, Pub.L. No. 104-121, 110 Stat. 847 (March 29, 1996), an 'individual shall not be considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.'" Bustamante v. Massanari, 262 F.3d 949, 954

(9th Cir. 2001), quoting 42 U.S.C. § 423(d)(2)(C); see also Sousa v. Callahan, 143 F.3d at 1242. The key factor in making the determination whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether the Commissioner would still find plaintiff disabled if he or she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535 (b), 416. 935(b). If the Commissioner finds that plaintiff's remaining limitations, absent the drug or alcohol addiction, would not be disabling, the Commissioner will find that drug addiction or alcoholism is a contributing factor material to the determination of disability and deny benefits. 20 C.F.R. §§ 404.1535 (b)(2)(i), 416.935(b)(2)(i); see also Sousa, 143 F. 3d at 1245.

**FINDINGS OF THE ALJ**

The plaintiff was born June 28, 1954. [AR 209.] The plaintiff has a high school education plus a year of college. [AR 194; AR 1591.] The plaintiff's past relevant work includes experience as a reproduction clerk, apartment manager, and construction worker. [AR 194.] The plaintiff alleges that he has been unable to work since February 2, 1990,[2] because of back, neck and foot pain, gout and emotional problems. [AR 485.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. The ALJ found that the plaintiff had degenerative cervical and lumbar disc disease, status post lumbar laminectomy; left shoulder impingement syndrome with degenerative joint disease; chronic allergic rhinitis; depressive disorder, not otherwise specified, with narcotic medication

---

[2]The ALJ indicated an alleged onset date of August, 1996, the date of the application. [AR 194.] See 20 C.F.R. 416.335.

dependence, chronic alcohol abuse, and history of alcohol dependence in questionable remission.  The ALJ found that the plaintiff had a combination of impairments which were "severe" as defined in the regulations but that the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4 absent the effects of the plaintiff's substance addiction and abuse. [AR 196, 199.] The ALJ further found that the plaintiff's allegations regarding his limitations were not totally credible.  The ALJ found that, absent the effects of substance addiction and abuse, the plaintiff retained the residual functional capacity to lift and carry with both upper extremities ten pounds frequently and twenty pounds occasionally; lift and carry with the left upper extremity five pounds frequently and ten pounds occasionally; stand and walk six out of eight hours per workday with customary breaks; sit six out of eight hours per workday with customary breaks; reach, handle, and finger constantly with the right arm; occasionally reach overhead and forcefully grasp or torque with the left hand; and occasionally climb, balance, stoop, kneel, crouch and crawl. Additionally, the ALJ found that the plaintiff should avoid vibration, hazards such as unprotected heights or dangerous equipment and machinery, and concentrated exposure to pulmonary irritants such as dust, fumes, and smoke.  Mentally, absent the plaintiff's substance addiction and abuse, the plaintiff could at least understand, remember and carry out simple, three to four step instructions in a moderately paced work environment not requiring hypervigilance, safety operations, or intense interpersonal interaction. [AR 197, 200.]  The ALJ found that the plaintiff was unable to perform any of his past relevant work prior to 2002 and that subsequent to 2001, the plaintiff

had no past relevant work. However, considering the plaintiff's age, that of a younger individual,[3] his education, his vocational background, and his residual functional capacity to perform a significant range of light work, and using Medical-Vocational Rules 202.20 and 202.21 as a framework for decision-making, the ALJ found that there were a significant number of jobs in the national economy which the plaintiff could perform. Accordingly, the ALJ concluded that the plaintiff was not under a disability as defined in the Act at any time pertinent to the decision. [AR 200.]

## THE PLAINTIFF'S CONTENTIONS

The plaintiff contends that the ALJ failed to comply with the Appeals Council's order properly to consider the opinions of the plaintiff's treating physicians, Dr. Yvette Holness and Dr. David Kim. The plaintiff further contends that the ALJ failed properly to consider the opinion of disability submitted by the plaintiff's treating psychiatrist, Dr. William Kim.

## DISCUSSION

On October 15, 1997, Dr. Yvette Holness completed a questionnaire on behalf of the plaintiff indicating that the plaintiff suffered from chronic low back pain. He was status post laminectomy and discitis. Dr. Holness opined that the plaintiff was unable to maintain significant sitting and standing because of reported pain. As support for her conclusion, Dr. Holness cited weak hip flexors 4/5 and occasional "collapsing weakness." Dr. Holness assessed, <u>inter alia</u>, that the plaintiff could only sit or stand/walk for a total of "0-2" hours in an eight hour day in a work setting. [AR 856-58.]

---

[3] An individual under age fifty is considered to be a "younger person." 20 C.F.R. § 416.963(c).

-7-

On June 1, 1998, Dr. David Kim, another treating physician, similarly opined, inter alia, that the plaintiff could only sit, stand or walk for a total of "0-2" hours in an eight hour day in a work setting. [AR 996.]

The Appeals Council remanded the matter for a third hearing because it found that the decision of ALJ Stevenson did "not contain an adequate evaluation of some of the opinion evidence in file." The Appeals Council found that Dr. Holness never suggested, as found by ALJ Varni and ALJ Stevenson, that the plaintiff "must be recumbent for 20 hours a day. The doctor only indicated that the claimant was limited to sitting, standing, and walking a total of 4 hours in an 8-hour work day (Ex. B32)." Although the Council was not suggesting that Dr. Holness' opinion was correct or that it was even supported, the Council, nevertheless, found that the ALJ's evaluation of Dr. Holness' opinion was based upon an improper interpretation of the evidence. Additionally, the Council noted that Dr. Kim's similar opinion and the opinion of Dr. Jay Otero, the plaintiff's psychiatrist, were not addressed. Accordingly, the Appeals Council remanded the matter for further consideration of the opinion evidence. The ALJ was to "provide appropriate rationale with specific references to evidence of record to explain the weight given that evidence." [AR 1318-19.]

The plaintiff argues that the latest ALJ "failed to even mention Dr. Holness' opinion that the Plaintiff is limited to sitting, standing, and walking for a total of 4 hours in an 8 hour day. [AR 193-200.] In fact, the ALJ fails to even mention Dr. Holness in her decision. [AR 857.]" [Joint Stipulation at 4.] The plaintiff also \\\

1 contends that the ALJ failed "to address the limitations that were
2 opined by Dr. [David] Kim in her decision." [Joint Stipulation at 5.]
3     The plaintiff's next contention is that the ALJ, in a similar
4 manner, disregarded the opinion of the plaintiff's current treating
5 psychiatrist, Dr. William Kim, who completed a questionnaire
6 indicating that the plaintiff had marked limitations in multiple areas
7 of work functioning. The plaintiff contends that "[t]he evaluation
8 was not considered by the ALJ in her decision." [Joint Stipulation at
9 8.]
10     The defendant counters that although the ALJ did not mention any
11 of these physicians specifically by name, the ALJ clearly addressed
12 their opinions by referring to their reports by exhibit numbers. Dr.
13 Holness' report and opinion is found at exhibit B-32. [AR 856-58.] Dr.
14 David Kim's opinion is found at exhibit B-48. [AR 995-97.] The report
15 of another treating physician, Dr. T. Ramos, is found at exhibit B-59.
16 [AR 1098.] The opinion of Dr. William Kim is found at exhibit B-73.
17 [AR 1494-1501.] The opinion of psychiatrist, Dr. Jay Otero, is found
18 at exhibit B-49 [AR 1023-28], and the report of another psychiatrist
19 whose name is illegible is found at exhibit B-42 [AR 889].
20     In noting "that the treating sources, psychiatric and medical,
21 have consistently indicated limits consistent with an inability to
22 perform any work, physically or mentally, on a sustained full-time
23 basis because of his musculoskeletal pain and depression," the ALJ
24 cited the following exhibits: "Ex. B-32; ex. B-42; ex. B-48; ex. B-49;
25 ex. B-51 at 4 ff; ex. B-57; ex. B-59 at 3; ex B-63; ex. B-73." [AR
26 \\\
27 \\\
28 \\\

197.] These exhibits contain the opinions of all of the physicians except Dr. Ramos.[4]

Nevertheless, it is clear that the ALJ intended to disregard the opinions of all of these treating physicians. However, the mere fact that the ALJ referred to each of these physicians by exhibit number does not mean that the ALJ's evaluation of the opinion evidence was adequate.

The opinion of a treating physician is generally entitled to greater weight than the opinions of a physician who has examined, but not treated the claimant. This is so because the treating physician is employed to cure and has a greater opportunity to know and observe his patient than a physician who only saw the claimant on one occasion. The opinion of an examining physician, in turn, is generally entitled to greater weight than the opinions of a physician who has not examined the claimant. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). This is not to say, however, that the opinion of even a treating physician is "necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989). If, for example, the opinion of a treating physician is rejected in favor of that of a non-treating physician, and the opinion of the non-treating physician

---

[4] Exhibit 59, where Dr. Ramos' opinion is found, contains thirty-one pages, and the only page to which the ALJ referred was exhibit 59 at page 3. This page is an opinion by Dr. Otero. The page containing the opinion of Dr. Ramos, is not cited. [AR 1098.] Perhaps this is because ALJ Stevenson specifically rejected Dr. Ramos' opinion in his decision [AR 1305], and because the Appeals Council did not specifically refer to Dr. Ramos' report in its second Order of Remand [AR 1318].

is based upon independent clinical findings, the opinion of the non-treating physician can constitute substantial evidence. It is then for the ALJ to resolve the conflict. <u>Andrews</u>, 53 F. 3d at 1041. If, on the other hand, the opinion of the non-treating physician is based upon the same clinical findings considered by the treating physician, the ALJ must cite specific and legitimate reasons for rejecting the treating physician's opinion. <u>Id</u>.

The ALJ rejected the opinions of the treating medical physicians because they "have made it clear that the pain is exaggerated and in excess of the observed signs of actual functioning and related to drug seeking behavior." [AR 197.]

As support for this conclusion, the ALJ noted that the plaintiff underwent lumbar spine surgery in July, 1996, and had a complicated recovery due to an infection to the surgical wound. However, according to the ALJ, by April, 1997, the plaintiff's "condition was stable with no clear signs of radiculopathy although he had self-prescribed a cane for himself. Ex. B-28 at 2-9. Postoperative studies have revealed no signs of recurrent disc herniation. Ex. B-30 at 6; ex. B-31 at 24; ex. B-70 at 116-118; ex. B-75. The treating source notes also provide no indication of any change in the status of the lumbar spine, and indeed indicate that the claimant's pain was controlled with medication in 1999 and that his pain responses were exaggerated and not consistent with the physical findings in January 2000. Ex. B-60 at 82." Rather than relying upon the opinions of the treating physicians, the ALJ cited the opinion of the consultative examiner as consistent with a residual functional capacity for a narrowed range of light work. [AR 195.]

\\\

The Commissioner contends that the ALJ properly relied upon the lack of objective support in rejecting these treating physicians' opinions. The Commissioner argues that the ALJ need not accept the opinion of any physician if it is unsupported by clinical findings. [Joint Stipulation at 7.] While the ALJ is correct that postoperative studies have revealed no disc herniation or that there is no clear evidence of radiculopathy, on the other hand, the record is not devoid of clinical findings, and while the questionnaires completed by these physicians are essentially "check-box" forms, these assessments are accompanied by a voluminous treatment record. This record reveals that treating, as well as examining, physicians have intermittently noted findings of decreased strength to the bilateral lower extremities and sensory deficits. [AR 781; see also AR 1054, 1057, 1124, 1383.]

Moreover, the ALJ provided no support for her conclusion that the plaintiff's pain was controlled with medication. To the contrary, the medical records reflect ongoing complaints of pain despite heavy medications and trials of epidural steroid injections. [AR 1184; see AR 1383.]

On the other hand, Exhibit B-60 at 82, cited by the ALJ, does suggest exaggeration on the part of the plaintiff. Dr. Tim Yoon indicated an "exaggerated response [to] light tactile stim[ulation]." [AR 1184; see also AR 91; but compare AR 1198, 1200 (observations of "obvious discomfort") and AR 1394.] The ALJ found that the plaintiff was not entirely credible, and the plaintiff himself does not challenge the ALJ's credibility finding. However, in rejecting the treating sources' opinions of disability, the ALJ isolated the observation of Dr. Yoon and cited it as if it were representative of

the opinions of the treating sources in general that the plaintiff's "pain responses were exaggerated and not consistent with the physical findings" and inconsistent with their opinions of disability. Such a suggestion is a mischaracterization of the evidence, since the ALJ has not cited any evidence that Dr. Holness, Dr. Kim, or Dr. Ramos found exaggeration of pain responses. Likewise, the ALJ's statement that the treating physicians had "made it clear" that the plaintiff's asserted pain is related to drug-seeking behavior is an overstatement. [AR 197.] This is not to deny, however, that the record is replete with references to drug-seeking behavior. [AR 90, 1005, 1010, 1272, 1279, for example.] In fact, Dr. David Kim especially made frequent reference to the plaintiff's addiction to narcotic pain medication and recommended an addiction clinic. [AR 1005, 1010, 1279.] Even so, this does nothing to rebut Dr. Kim's opinions of disability. To the contrary, Dr. Kim continued to prescribe pain medication despite his suspicions of narcotic abuse because he recognized that the plaintiff "does have organic disease of spine and [is] in pain." [AR 1005.] Dr. Kim, therefore, made it clear that consideration of the plaintiff's drug-seeking behavior did not override considerations of the nature and severity of the plaintiff's impairment and pain.

    Clearly, therefore, in relying upon the objective factors of disability, the ALJ failed to take adequate account not only of the subjective factors of the treating physicians' opinions [see Rodriquez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989)], including the treating physicians' clinical impressions and observations, but the treating physicians' expertise and experience as well as their personal knowledge of the plaintiff. 20 C.F.R. § 416.927(d)(2)(Generally, more weight is given to opinions from treating sources, "since these

sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [an individual's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."] The ALJ's reasons, therefore, for rejecting the opinions of Dr. Holness, Dr. David Kim, and Dr. Ramos are neither sufficiently specific nor are they supported by substantial evidence in the record.

The same holds true for the ALJ's blanket rejection of the treating psychiatrists' opinions which also unanimously indicate that the plaintiff is disabled.  The ALJ rejected these assessments either because the treating psychiatric sources provided "no indication that they were aware prior to 2001 of the very serious alcohol abuse to which the claimant admitted in 2001 . . ." [AR 196] or because they "have consistently overlooked the claimant's drug seeking behavior and discounted the evidence of continuing alcohol abuse and probable alcohol dependence by simply affirming the claimant's declaration that his abuse is in remission" [AR 197].

The plaintiff himself admits that he is addicted to pain killers. [AR 1620.] Although the plaintiff is less forthcoming about his use of alcohol, there is, likewise, no question that during unspecified portions of the period at issue, he was abusing alcohol. [AR 1620; see also AR 1383, 1391; see also AR 153.]

However, even assuming, arguendo, that the plaintiff was abusing alcohol for the entire period at issue, and even assuming, arguendo, that the treating psychiatrists were either unaware of this abuse or they gave full credence to the plaintiff's claims of remission, this

does not mean that the opinions of these physicians were properly rejected. To the contrary, the fact that the treating psychiatrists seemingly discounted the evidence of substance addiction may simply be because they considered the plaintiff's overriding problems to be that of depression, not of alcoholism, and the ALJ's conclusion that "the claimant's depression is related to his substance abuse and that absent such abuse he has at most mild depression that is a non-severe impairment and would not preclude the performance of at least basic mental work-related activities" is unaccompanied by any reference to any supportive evidence in the record. [AR 196.]

The ALJ also questioned the treating psychiatrist's recent assignment of a GAF[5] of 35, which admittedly suggested "an extreme level of dysfunction," because the treating source had only scheduled the plaintiff to be seen bimonthly, which suggested to the ALJ that the plaintiff's condition was "rather stable." [AR 196.] Again, the ALJ fails to cite any evidence in the record to support her inference. Even if the plaintiff's condition were "stable"–i.e., not changing–this does not contradict any opinions concerning the severity of the plaintiff's psychiatric impairment. As the 3rd Circuit noted in Morales v. Apfel, 225 F.3d 310, 319 (3rd Cir. 2000), "the work environment is completely different from home or a mental health clinic. The physician's observation that the claimant was "'stable and well controlled with medication' during treatment" did not support the

---

[5] Global Assessment of Functioning. The GAF scale reports a "clinician's judgment of the individual's overall level of functioning" which is used in "planning treatment and measuring its impact, and in predicting outcome." American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000).

medical conclusion that the claimant could return to work. Despite the his notation that the claimant was stable, the physician nevertheless opined that the claimant's "mental impairment rendered him markedly limited in a number of relevant work-related activities. Other information in the treatment records supports this opinion." Therefore, the physician's opinion that the claimant's ability to function was seriously impaired or nonexistent in every area related to work "shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting." In the plaintiff's case, there is no such notation that the plaintiff is "stable." Rather, the ALJ infers this from the frequency of medication visits. In any event, however, clearly, stability does not equate to ability to work nor does it imply a conflict between Dr. Otero's opinion and the treatment notes.

Similarly, the fact that the plaintiff only saw Dr. Otero bimonthly does not necessarily imply that more frequent treatment was not needed or desired. This court notes that in September, 2000, the plaintiff sought help from an "outside psychiatrist" precisely because he was only able to see Dr. Otero every two to three months. [AR 1483.] The record, moreover, does not support any inference that the bimonthly visits represented the full extent of the plaintiff's treatment, because the record also indicates that in addition to seeing his psychiatrists, the plaintiff was also referred to various psychotherapy groups at the Veterans Administration. [Id.; see also AR 1401, 1407, 1412, 1419, for example.]

The Commissioner, on the other hand, reiterates her argument that the psychiatrists' opinions lack objective support. [Joint Stipulation

at 10.] However, if the lack of objective support is an insufficient reason to reject the opinions of the plaintiff's medical doctors, it is even less probative in evaluating the opinions of mental health physicians. As the court noted in <u>Sanchez v. Apfel</u>, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000), <u>quoting</u> <u>Christensen v. Bowen</u>, 633 F. Supp. 1214, 1220-21 (N.D. Cal.1986) (quotation marks and citation omitted):

> [C]ourts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

In the plaintiff's case, the ALJ rejected the unanimous opinions of multiple treating physicians essentially because the plaintiff is a substance abuser. However, the fact that the plaintiff may be a substance abuser is not the issue. The ALJ relies upon these physicians' failure to consider substances as

evidence of the unreliability of these physicians, yet the ALJ herself apparently accepts their conclusion that the plaintiff is disabled.  Nevertheless, the ALJ also concluded that absent substances, the plaintiff would not be disabled and that he would have only a non-severe mental impairment.  However, the ALJ has utterly failed to reference any evidence in the record that supports this conclusion.  The fact that the plaintiff abuses or is addicted to substances does not mean that he cannot have a severe mental illness.  Substance addiction and mental illness, unfortunately, are not mutually exclusive.

Nevertheless, just as the Appeals Council had stated in its previous remands, this is not to say that the opinions of these physicians is necessarily correct or that these opinions are supported.  However, the ALJ is charged with citing specific and legitimate reasons, supported by reference to evidence in the record, for rejecting these opinions.  The ALJ's reasons for rejecting the treating physicians' opinions are not specific and they are not sufficiently legitimate and supported by evidence in the record.  Accordingly, the matter requires yet another remand for evaluation of the treating physicians' opinions. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  As before, if the plaintiff is found disabled, then the issue of whether the plaintiff's substance addiction is a contributing factor material to a finding of disability will again be required. Bustamante, 262 F.3d at 955.

\\\

\\\

\\\

**ORDER OF REMAND**

The Court has reviewed the pleadings, Joint Stipulation of the parties, and the transcript of the record.  In accordance with the foregoing discussion, the magistrate judge finds that good cause has been shown for remanding the case to the Commissioner.

IT IS ORDERED that this case be remanded to the Commissioner of the Social Security Administration pursuant to sentence four of 42 U.S.C. section 405(g) for further administrative proceedings consistent with the reasons set forth herein.

Dated: January 25, 2006

                                                /s/
                                  JAMES W. McMAHON
                                  United States Magistrate Judge